**Harold REESER and Arnold Royer, Plaintiffs,**

**v.**

**ESMARK, INC., PENSION BOARD, Defendant.**

Civ. No. 82–268–A.

United States District Court,
S.D. Iowa, C.D.

June 9, 1989.

MacDonald Smith and Dennis M. McElwain of Smith & Smith, Sioux City, Iowa, for plaintiffs.

Robert C. Galbraith of Davis, Hockenberg, Wine, Brown, Koehn & Shors, Des Moines, Iowa, for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT FOR DEFENDANT

WOLLE, District Judge.

This action, arising under the Employee Retirement Income Security Act, 29 United States Code section 1001 et seq. (ERISA), was submitted on elaborate stipulations as well as the testimony of the plaintiffs at trial. The court established a schedule for filing post-trial briefs, then allowed the filing of additional briefs on the question of the applicability of a recent United States

Supreme Court case, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The case is ready for decision.

Plaintiff Harold Reeser was employed by Swift & Co. (Swift) at its Bookey Packing Plant in Des Moines, Iowa, from 1955 until the plant closed on June 30, 1979. Plaintiff Arnold Royer was similarly employed from 1964 until June 30, 1979. Both plaintiffs, physically impaired, were employed at the time of the plant closing under restrictions limiting the nature and type of jobs they could perform. Both were covered by a collective bargaining agreement providing that when a plant closed, employees with sufficient seniority were entitled to apply for a transfer to other Swift plants in lieu of severance pay. Plaintiffs applied for such a transfer, but Swift denied the requests on the ground that plaintiffs did not meet a precondition of physical fitness.

Swift is a subsidiary of Esmark, Inc. and is a participating employer in the Esmark, Inc. Pension Plan for Non-Salaried Employees (plan). Plaintiffs were participants in the plan and were eligible for a retirement pension at age 65 and a disability pension prior to that time if they met plan requirements. When Swift denied plaintiffs' transfer requests, plaintiffs applied to the defendant Esmark, Inc. Pension Board (Board) for disability pensions under the plan. The Board denied the application, triggering this ERISA action.

■ I. *Standard of Review.* A review of a denial of benefits challenged under 29 United States Code section 1132(a)(1)(B) shall be de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire*, at ——, 109 S.Ct. at 956, 103 L.Ed.2d at 95. Defendant contends that a deferential standard of review is appropriate here because it exercised a discretionary power expressly set forth in the plan. Plaintiffs assert that a de novo review is necessary because defendant did not have sole discretion to interpret the plan or to decide eligibility.

The plan provides:

All decisions of the Pension Board as to the facts of any case and the meaning and intent of any provision in this Plan or of its application to any case shall be final and conclusive.

Plan, Article III ¶ 6.

The plan further provides:

Any employee under normal retirement age who shall become disabled, other than temporarily, so as to be unable to perform the duties of any job available for him at the unit where employed, *as determined in the sole discretion of the Pension Board*, shall, if such employee has completed ten (10) years or more of credited service prior to such disability, be entitled to a disability retirement pension to commence upon retirement.

Plan, Article VIII (emphasis added).

These plan provisions explicitly gave defendant the wide discretion described by the Supreme Court in *Firestone Tire:* here, discretion to determine a participant's eligibility for disability benefits and to construe the plan terms.

Plaintiff's reliance on an arbitration provision in the plan is unfounded; the matter was neither grieved nor submitted to arbitration.

The question then is whether defendant's decision was arbitrary or capricious.

■ II. *Denial of Disability Benefits.* The Board found that both plaintiffs suffered from partial permanent disabilities at the time of the termination of their jobs. Nevertheless, it found that the plaintiffs were ineligible for benefits under Article VIII of the plan because they lost their jobs as a result of the plant closure, not because of their disabilities. Plaintiffs make three arguments supporting their claim that the Board's plan interpretation was arbitrary or capricious. The court finds none of the arguments persuasive.

First, plaintiffs contend the defendant Board failed to consider Swift's refusal to transfer them to other positions. The Board, however, specifically noted that it *did* consider Swift's finding that plaintiffs were not "physically fit" for transfer.

Having considered the transfer denial, the Board then rejected that evidence, concluding that for purposes of determining benefit eligibility under the plan it was inappropriate to look beyond the terms of the plan itself. That conclusion was neither arbitrary nor capricious; rather, it was compelled by the clear language of the plan. The Board was empowered by Article III (paragraph 6) to determine "the meaning and intent of any provision in this Plan. . . ." Faced with interpreting a provision restricting disability to those situations in which an employee is permanently "unable to perform the duties of any job available for him at the unit where employed," Article VIII, the Board reasonably concluded that it was not bound by the Swift interpretation of "physically fit" within the meaning of a separate document.

Plaintiffs argue that they may have qualified for disability pensions earlier in their careers at Swift; that possibility does not alter the fact that they were able at the time of the plant closing "to perform the duties of any job available for [them] at the unit where employed."

Plaintiffs' second argument is that the Board's interpretation of the plan is contrary to its overall purpose. They maintain that the Board inappropriately focused on the source of the unavailability of work, created disparity in the treatment of applicants, and disregarded the employees' overall employability with Swift.

The Board's interpretation of the plan was not arbitrary or capricious. The Board stated

> that the purpose of the disability provisions of the Esmark Pension Plan is to provide a source of income to long service employees who become disabled, other than temporarily, to such a degree that they are unable to perform any job at their employment unit. The Board believes that the Pension Plan is designed to provide replacement income and/or retirement income for such unfortunate employees.

The Board's reading of the plan is a reasonable one.

Finally, plaintiffs argue that the Board's plan interpretation is inconsistent with language contained in the Summary Plan booklet (booklet). Granted, the booklet describes disability as an "inability to perform any job the *Company* has available for you," (emphasis added), while the plan narrows disability to an inability to "perform duties of any job unavailable . . . at the *unit* where employed," Article VIII (emphasis added). Nevertheless, the booklet expressly provides that "[i]n the event of any conflict between this booklet and the Plan document, the Plan document will govern." It was therefore reasonable for the Board to ignore the conflicting booklet language. Moreover, plaintiffs have not alleged detrimental reliance on the language in the booklet.

III. *Conclusion.* On the review mandated by *Firestone Tire,* at ——, 109 S.Ct. at 956, 103 L.Ed.2d at 95, this court concludes that the Board's decision was not arbitrary or capricious. Judgment shall be entered for the defendant and against the plaintiffs, with costs taxable against the plaintiffs.

IT IS SO ORDERED.