**Andrew BARISH, Sr., Plaintiff,**

**v.**

**The UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUND, Defendant.**

**Civ. A. No. 90–160.**

United States District Court,
W.D. Pennsylvania.

Dec. 20, 1990.

Ronald J. Zera, Pittsburgh, Pa., for plaintiff.

Marshall J. Conn, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

Currently before the court is a claim for disability pension benefits under a plan governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, et seq. (ERISA). Both parties have moved for summary judgment.

On March 23, 1984, plaintiff Andrew Barish suffered a heart attack while employed as a bulldozer operator at the Bolgna Coal Company. As a member of the United Mine Workers of America (UMWA), he sought benefits from the UMWA 1974 Pension Trust under the eligibility requirements set forth in the 1974 Pension Plan (the Plan).[1] The Plan provides that a "[p]articipant who ... becomes totally disabled as the result of a mine accident ... shall ... be eligible for a disability pension while so disabled." (Defendant's Exhibit B at 5). Mr. Barish's claim was denied, however, on the grounds that his disability is not the "result of a mine accident."[2] After an internal review process, plaintiff filed this action seeking to recover the benefits in question. 29 U.S.C. § 1132(a)(1)(B).

---

1. The 1974 fund is one of five separate employee benefit funds, collectively referred to as The United Mine Workers of America Health and Retirement Funds, set up by the National Bituminous Coal Wage Agreement of 1974 in accordance with section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c). We will refer to the defendant in this case as the "Fund."

2. Both sides agree that Mr. Barish is disabled and that he is a participant in the plan.

The instant dispute is a factual dispute. Plaintiff contends that he was removing a heavy branch from the hydraulic system in his bulldozer when he suffered the heart attack. Defendant argues that Barish was merely operating the bulldozer. Apparently this is significant because if the heart attack resulted from the strenuous activity of removing the branch, Mr. Barish might qualify as having been injured as a result of a "mine accident." To so qualify, his injury must have been "unexpected," "definite," and the result of "force or impact." (Defendant's Memorandum at 5, and Exhibit C). All agree that plaintiff's injury met the first two tests, defendant argues that because Mr. Barish was merely operating the bulldozer, it fails to meet the third.

There is absolutely no disagreement about the interpretation of the relevant provision; the Fund does not argue that even if plaintiff suffered the heart attack as a result of removing the branch he still lacks the requisite "force or impact" element in his claim. In fact, an example promulgated by the trustees to aid in the plan's construction explicitly shows that the plan covers "a miner who suffers a heart attack while pushing a heavy object in the normal course of his job." (Plaintiff's Brief in Support of Summary Judgment Exhibit 8). Neither does the plaintiff argue that merely operating a bulldozer is sufficient to qualify as a mine accident. Instead, each party makes a purely fact-based argument.

Defendant argues that the evidence establishes that plaintiff did not remove any branches or engage in any strenuous work. Moreover, the Fund continues, the evidence proves conclusively that Barish was merely operating a bulldozer when he was stricken. Defendant points out that when plaintiff sought medical treatment in 1984 he made no mention of removing the branch— he stated only that he operated the bulldozer. In fact, according to the defendant, the only evidence of strenuous activity is plaintiff's own 1986 testimony which is contradictory to the 1984 statements he made in the course of medical treatment. Naturally, plaintiff counters that the 1986 statements are correct and were given the first time they were requested.

### Applicability of Firestone to Factual Determinations

*Firestone Tire & Rubber, Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), marked the inception of the now well-established rule that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id., 109 S.Ct. at 956. *Firestone* dealt with plan administrators' interpretive determinations, and it generally comes up in that context. Factual determinations, however, have historically been given greater weight than interpretive ones. The question for this court is whether the factual determinations of ERISA plan administrators warrant deference similar to that accorded factual findings in other contexts. The Third Circuit opinion in *Firestone* specifically left that question open. *Bruch v. Firestone*, 828 F.2d 134, 144 n. 9 (3d Cir.1987), *aff'd*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Teeter v. Supplemental Pension Plan of Consol. Rail Corp.*, 705 F.Supp. 1089, 1094 n. 1 (ED Pa 1989). Now, however, we must determine whether the *Firestone* rule mandating de novo review in the absence of an express contrary provision applies to factual determinations as well as interpretive ones.

Few courts have confronted the issue and those that have are not in agreement. Compare *Petrilli v. Drechsel*, 910 F.2d 1441, 1446 (7th Cir.1990) (dictum), *Giusti v. General Electric Company*, 733 F.Supp. 141, 146–48 (NDNY 1990), and *Buchholz v. General Electric Employee Benefit Plan*, 720 F.Supp. 102, 103 n. 1 (ND Ill 1989), *Newell v. Prudential Insurance Co. of America*, 725 F.Supp. 1233 (ND Ga 1989), all of the view that *Firestone* applies to both factual and interpretive determinations, with *Questech Inc. v. Hartford Accident & Indemnity Co.*, 713 F.Supp. 956, 963 (ED Va 1989), *Petrilli v. Drechsel*, 1989 WL 106639 (Sept. 12, 1989 ND Ill),

rev'd on other grounds, *Petrilli v. Drechsel*, 910 F.2d 1441, 1446 (7th Cir.1990), and *Moshin v. John Hancock Mutual Life Ins. Co.*, No. 88–60415 (ED Mich. Nov. 27, 1989) going the other way.

The courts finding that *Firestone* applies to both types of decisions rely on the language of the Supreme Court's holding which, they explain, specifically recognizes and addresses the two discrete types of determinations: questions of fact are those where the administrator "determine[s] eligibility" under pre-determined standards, while questions of interpretation are those where the administrator would "construe the terms" of a plan. *Petrilli*, 910 F.2d at 1446–47 (crediting the argument but not deciding the issue); *Buchholz*, 720 F.Supp. at 103 n. 1. Additionally, they find that the two main facets of *Firestone*'s reasoning apply with equal force to both types of decisions: analogy to trust law supports no distinction, *Petrilli*, 910 F.2d at 1446–47, and ERISA's special solicitude for the rights of employees weighs in favor of allowing them to subject factual determinations to de novo review. *Giusti*, 733 F.Supp. at 147–48. Separating factual and interpretive questions has also been seen as "unnecessarily formalistic." *Newell*, 725 F.Supp. at 1241.

■ These cases are unpersuasive. We find that *Firestone* does not apply to issues of fact and that absent any conflict of interest, bad faith or similar concerns, plan administrators' resolutions of factual disputes are to be reviewed only to insure that they are supported by substantial evidence.[3]

The special treatment accorded original factual determinations dates from the Constitution, U.S. Const. Am. VII, and is found throughout our legal system, especially in the areas of appellate review, see Fed.R. Civ.P. 52, and administrative law, see K.

Davis, Administrative Law Treatise 1982 Supp. at 518–30; see, e.g., *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 109 S.Ct. 1851, 1860–61, 104 L.Ed.2d 377 (1989); *D. Harris Masonry Contracting, Inc. v. Dole*, 876 F.2d 343 (3d Cir. 1989). See generally Aldisert, The Judicial Process, 689–730 (1976); K. Davis, Administrative Law Treatise 119–27 (1st Ed.1958). Even in trust and pension law, factual and interpretive decisions are often analyzed separately.[4]

The reasons for the disparate treatment vary with the context, but the common and most glaring reason is the exorbitant cost to the government and all parties of repetitive trials on factual matters. The argument that allowing de novo review is in the employees' interest, therefore, is far from self-evident; extra litigation costs will ultimately be borne by the employees themselves. It is true that the Supreme Court rejected a similar argument in *Firestone* regarding the costs of litigating *interpretive* questions de novo, *Firestone*, 109 S.Ct. at 956, but that only underscores the conclusion that *Firestone* should not apply to factual determinations. The costs of litigating factual disputes are likely to be far greater than the analogous costs in interpretive disputes while the reasons for the expense are far less compelling. Perhaps, by all its accoutrements, a federal court is in the better position to decipher the meaning of an obscure phrase in a benefit plan; there is no cause, however, to put greater faith in a federal court's choice to believe, for instance, one set of witnesses over another. If there is no conflict of interest, bad faith or the like, a federal court's thorough probing of the factual record to be certain that the requisite quantum of evidence is found there, suffices to protect the parties against error. See *Questech*, 713 F.Supp. at 963. Thus, neither ERISA's analogue in trust law, nor ERISA's solicitude for employees mandates that federal

---

3. There is no allegation of bad faith or conflict of interest in this case.

4. See, e.g., *Huber v. Casablanca Industries, Inc.*, 916 F.2d 85, 89 (3d Cir.1990) (arbitration); *Pasternack v. Diamond*, 3 A.D.2d 422, 161 N.Y.S.2d 277 (App.Div. 1st Dep't 1957). This court has found no cases requiring a trust instrument to

grant discretion on factual matters as a prerequisite to deferential review. Rather, if discretion is granted, then interpretive questions receive the same deferential review as factual determinations always had. See, e.g., *Meckes v. Cina*, 75 A.D.2d 470, 429 N.Y.S.2d 936, 937 (App. Div. 4th Dep't 1980).

district courts be available to retry every factual determination of plan administrators.

Neither does the language of the Supreme Court's opinion suggest the same treatment for these different types of determinations. As noted earlier, courts emphasize the dichotomy in the holding itself: "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to *determine eligibility* for benefits or to *construe the terms* of the plan." *Firestone*, 109 S.Ct. at 956 (emphasis added). However, introductory language sets the direction in *Firestone* and seems to limit the scope of the entire passage quoted above: "The discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions alleging denials of benefits *based on plan interpretations.*" Id. at 953 (emphasis added); *Petrilli v. Drechsel*, 1989 WL 106639, 3 (ND ILL 1989). Thus 'eligibility' and 'construction' both appear to be subsets of the interpretive category. Moreover, the sentence immediately preceding the holding evidences the concerns with which the Court was immediately concerned: "As this case aptly demonstrates, the validity of a claim to benefits under an ERISA plan is likely to turn on the *interpretation of terms* in the plan at issue." Id. 109 S.Ct. at 956 (emphasis added).

It is a truism that language in the Supreme Court's opinions should not readily be assumed to be superfluous, and perhaps the explicit reference to "eligibility" in the holding is more telling than the lack of any such reference in other passages. *Petrilli*, 910 F.2d at 1446–47. Rather than decide the issue upon such a basis, however, this court prefers a reading of the opinion which finds all the passages consistent with one another. The issues before the Court and the context in which the holding was stated show that "plan construction" probably refers to pure questions of interpretation while questions of "eligibility" are simply those of a more general or "mixed" character. At the very least *Fire-*

*stone* offers no particular *support* for a wholesale abandonment of the well established and well reasoned distinction between review of fact and of construction. We conclude then, that *Firestone* does not govern review of purely factual determinations by plan administrators.

### Review of the Denial of Benefits Under the Arbitrary and Capricious Standard

Before *Firestone*, administrators' decisions were reviewed under the arbitrary and capricious standard, *Wolf v. National Shopmen Pension Fund*, 728 F.2d 182, 187 (3d Cir.1984); *Rosen v. Hotel and Restaurant Employees and Bartenders Union*, 637 F.2d 592, 596 n. 5 (3d Cir.1981), unless a conflict of interest or a showing of bad faith warranted less deferential review. *Bruch v. Firestone*, 828 F.2d 134 (3d Cir.1987), *aff'd on other grounds*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Purely factual determinations should be reviewed in a similar manner. Since there is no allegation of bad faith or conflict of interest, review of the decision is limited to a search for arbitrariness and caprice.

Theoretically, there are three levels of review, (1) arbitrary and capricious, (2) substantial evidence, and (3) clearly erroneous. See K. Davis, Administrative Law Treatise 1982 Supplement 518–19. The borders of these standards are not well defined, however, id.; cf. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and under ERISA, courts often explain that an arbitrary or capricious determination is one that is not supported by substantial evidence. *Pierce v. American Waterworks*, 683 F.Supp. 996, 1000 (W.D.Pa.1988); *Wardle v. Central States, S.E. & S.W. Areas Pension Fund*, 627 F.2d 820 (7th Cir.1980). Substantial evidence, in turn, is the quantum of evidence that would allow a reasonable person to agree with the proffered inference. The evidence need not obscure all other possible inferences; it is enough that there is "more than a mere scintilla" of evidence in favor of the conclusion under review. *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.1979); *Kowalchick v.*

*Director, OWCP, US Dep't of Labor,* 893 F.2d 615, 620 (3d Cir.1990). "In short, unless we can find that the challenged decision is not rational, we must uphold the decision of the [administrator]." *Wolf,* 728 F.2d at 187 (citation omitted); *Shiffler v. Equitable Life Assurance Society,* 838 F.2d 78, 83 (3d Cir.1988).

■ Here, the trustees found that Barish was not engaged in any strenuous activity such as removing a branch from the bulldozer's hydraulic system. This conclusion is amply supported by the evidence. First, the medical report Barish gave to his treating physician on the day of the attack states that he "began working ... running a bulldozer at 7 o'clock. At 8 o'clock he developed substernal chest pressure and aching pain which was rather severe. He stopped working and sat down with his head down to relax, the pain resolved slowly over 10 minutes. He went back to work and 30 minutes later he had a recurrence of the same pain." (Defendant's exhibit A at 183). This fairly detailed account of the moments around the attack makes no mention of the branch, while later Barish himself described the task as "real rough" job that took "about eight to ten minutes." (Defendant's Exhibit A at 19). Moreover, Barish's employer's report also lacked any reference to a branch. "Indeed, evidence that Barish had performed any activity in addition to operating the bulldozer did not surface until June 10, 1986—more than two years after the date of his heart attack—when Barish testified before the Bureau of Compensation...." (Defendant's Brief at 12). Barish, on the other hand, presents only his own testimony and the letter of a doctor who, because he examined Barish in 1986, could only have re-reported what Barish told him. Thus, the trustees, and the Bureau of Compensation which heard the appeal, have more than a substantial evidentiary basis for their denial of benefits.

On this motion for summary judgement, I must determine whether there is a genuine dispute over a material fact which a trial is needed to resolve. The defendants have proffered substantial evidence to support their determination. It is now incumbent upon Mr. Barish to come forward with evidence discrediting or discounting the defendants', or which might in some other way allow a fact-finder to conclude that notwithstanding defendants' substantial evidence, the finding was irrational in the face of the plaintiff's evidence. Only then would there be "a genuine factual issue as to whether [he] was so clearly entitled to the benefits [he] sought that the denial was clear error or not rational." *Shiffler,* 838 F.2d at 83 (citations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Chipollini v. Spencer Gifts,* 814 F.2d 893, 896 (3d Cir.1987); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2727 (Supp.1987). The evidence proffered by the defendant and the paucity of the opposition make it apparent that no reasonable fact-finder could decide that the trustee's decision lacked substantial evidentiary support. Defendants, therefore, are entitled to judgment as a matter of law, and their motion is granted by the accompanying order.

## ORDER

AND NOW, this 20th day of December, 1990, for the reasons set forth in the accompanying memorandum opinion,

IT IS HEREBY ORDERED THAT:

(1) Plaintiff ANDREW BARISH, SR.'s motion for summary judgment is DENIED.

(2) Defendant UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUND's motion for summary judgment is GRANTED. Judgment is entered in favor of defendant UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUND and against plaintiff ANDREW BARISH.

(3) Defendant UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUND's motion to strike plaintiff's demand for a jury trial is DENIED as MOOT.