**Charles Herman PARSONS; Lonnie D. Black, Sr.; Arthur C. Jeffers, Plaintiffs–Appellees,**

v.

**WEST VIRGINIA WORKS HOURLY EMPLOYEES PENSION PLAN; Randy Greely; Larry Moncrief; Mike Clancey; Chuck Emery, as Plan Administrators, of the West Virginia Works Hourly Employees' Pension Plan, Defendants–Appellants.**

No. 88–2649.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1989,

Decided July 18, 1989.

William David Levine, for defendants-appellants.

Cheryl Lynne Connelly (R. Gregory McNeer, J. Patrick Jones, Campbell, Woods, Bagley, Emerson, McNeer and Herndon, on brief), for plaintiffs-appellees.

Before HALL, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

PER CURIAM:

West Virginia Works Hourly Employees Pension Plan and various administrators of the Plan, defendants below, appeal from the district court's order granting summary judgment to the plaintiffs Charles Herman Parsons, Lonnie D. Black, Sr. and Arthur C. Jeffers, and denying the Plan's cross-motion for summary judgment. The district court held that the plaintiffs, former employees who became permanently incapacitated subsequent to their termination of employment from a company covered by the Plan, were eligible for permanent incapacity retirement benefits. Finding that the district court correctly interpreted the relevant contract provisions, we affirm.

I.

The facts of this case are not in dispute. Parsons, Black and Jeffers were continuously employed by Conners Steel Company at its Huntington, West Virginia, plant from their respective dates of hire through June 30, 1982, the date on which the Huntington plant was permanently closed. As of the closing date, each had the following amount of accrued service:[1] Parsons—26

---

1. Although the plant closed on June 30, 1982, an arbitration decision ruled that each plaintiff's

years, 2 months; Jeffers—20 years, 2 months; and Black—19 years, 1 month. Subsequent to the plant closing and the concomitant terminations of employment with Conners, each became totally and permanently disabled within the meaning of the Plan.

Conners and the United Steelworkers of America entered into a pension agreement dated October 1, 1974, covering the employees at the Huntington plant. The plaintiffs are entitled to deferred vested retirement benefits upon reaching age 60. Each plaintiff, prior to reaching age 60, applied for permanent incapacity retirement benefits, and each claim was denied on the ground that each employee was not permanently incapacitated when the plant closed on June 30, 1982. Each plaintiff then filed a separate action in the district court seeking incapacity benefits, and these suits were consolidated. The district court held that each plaintiff was entitled to the benefits under the Plan despite the fact that the permanent incapacity of each occurred subsequent to the plant closing. Accordingly, each was awarded benefits, plus prejudgment interest from the date of the denial of their respective applications.[2] This appeal followed.

## II.

The section of the Plan which defines the eligibility criteria for permanent incapacity retirement provides as follows:

Any participant who shall have had at least fifteen years continuous service and who shall become permanently incapacitated shall be eligible to retire on or after January 1, 1976, and shall upon his retirement (hereinafter "permanent incapacity retirement") be eligible for a pension. A participant shall be considered to be permanently incapacitated (as "permanently incapacitated" is used herein) only (a) if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any employment of the type covered by the

basic agreement, and (b) after such total disability shall have continued for a period of six consecutive months and in the opinion of a qualified physician, it will be permanent and continuous during the remainder of his life....

In the definitions section of the Plan, "participant" is defined as follows:

1.1 Whenever used herein ...

(c) "Participant" means any employee who shall have had at least one year of continuous service and shall have attained the age of 25 years (21 years effective January 1, 1985) and who, from time to time during the period in which this agreement is effective, is accruing continuous service; where so indicated in the context, "participant" also refers to a person who is no longer accruing continuous service but who attained pension eligibility under this agreement at the date he ceased to accrue continuous service, including a person who is retired and is receiving or is entitled to receive pension benefits under this agreement;

The Plan contends that since none of the former employees was eligible to begin receiving a pension as of the date his employment was terminated, none had "attained pension eligibility" as of that date and, therefore, was not a "participant" within the definition given in section 1.1(c). The district court found that each former employee came within the definition of "participant" since it was stipulated that each was eligible for retirement benefits in the future, i.e., upon reaching age 60. Thus, although none of the three was "accruing continuous service" at the time of the onset of their respective disabilities, each had "attained pension eligibility ... at the date he ceased to accrue continuous service...." The district court's analysis conclusively rebuts the appellants' argument.

The Plan's argument ignores the final provision in section 1.1(c) which expressly includes in the definition any retired person who "is receiving or is entitled to receive"

---

service would accrue through June 30, 1984. This decision is not involved in this appeal.

**2.** The computation of the awards and the addition of prejudgment interest are not raised in this appeal.

pension benefits. Obviously, this definition of participant contemplates inclusion of former employees whose pension rights are vested but deferred as of the date their service with the company ended. This conclusion is buttressed by another section of the Plan which provides as follows:

"Any participant not eligible to receive a pension under any provision of this section 2 whose continuous service is broken on or after January 1, 1976, for any reason and who, at the time of such break in continuous service, shall have at least ten years of continuous service shall be eligible for a pension...."

Again, this section contemplates as being within the definition of "participant" persons no longer employed but not yet eligible to receive a pension.

In addition to the foregoing reasons, each of which was advanced by the lower court, we note that additional support for the result is found elsewhere in the Plan. Section 2.5 excludes from permanent incapacity retirement benefits any participant whose incapacity results from "future service in the armed forces and which prevents him from returning to employment with the company and for which he receives a military pension...." Inclusion of this single, very limited exception to eligibility on the basis of incapacity incurred while not in the employ of Conners is a strong indication that other, post-employment incapacity is not excluded.

### III.

The pension plan is governed by the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Under the standard extant in this and most other jurisdictions at the time, the lower court reviewed the Plan trustee's decision to deny benefits under an arbitrary and capricious standard. LeFebre v. Westinghouse Electric Co., 747 F.2d 197, 204 (4th Cir.1984). However, subsequent to the district court's decision but prior to argument before this Court, the United States Supreme Court handed down its decision in Firestone Tire and Rubber Co. v. Bruch, — U.S. —, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Bruch held that, in the absence of a provision in a pension plan clothing the plan trustee with discretionary authority to construe a plan's terms, review of a denial of eligibility should be de novo. We are unable to locate any provision in the Plan that would confer such discretionary authority on the plan administrator, and both parties agree that the de novo standard is applicable here. Inasmuch as the district court's contextual analysis of the Plan involved no reference whatsoever to factual findings of the sort that command deference under an arbitrary and capricious standard, it should be obvious that the same result would be reached under the less deferential de novo standard. Indeed, the analysis would not differ. The Plan appellants' arguments in support of its position simply do not comport with the terms of the Plan. Accordingly, we affirm the judgment of the district court.

AFFIRMED