Deborah SISKA, Plaintiff-Appellant,†

v.

The TRAVELERS, Defendant-Respondent.

Court of Appeals

*No. 90-1307. Submitted on briefs January 2, 1991.—Decided February 20, 1991.*

(Also reported in 467 N.W.2d 174.)

† Petition to review denied.

On behalf of plaintiff-appellant, the cause was submitted on the briefs of *William L. Seymour* of *Seymour, Kremer, Nommensen & Morrissy* of Elkhorn.

On behalf of defendant-respondent, the cause was submitted on the brief of *John R. Pendergast, Jr.* of *Riordan, Crivello, Carlson & Steeves, S.C.* of Milwaukee.

Before Nettesheim, P.J., Scott and Anderson, JJ.

ANDERSON, J.   Deborah Siska appeals from a summary judgment in favor of The Travelers. The trial court determined that Travelers did not act arbitrarily or capriciously when it denied Deborah's request for proceeds from an accidental death benefits plan insuring her husband, Donald Siska. There are three issues on appeal: (1) whether the denial of benefits based on factual findings by Travelers is subject to a deferential standard of review; (2) whether the court's review of the denial of benefits is limited to the record before Travelers at the time of the denial; and (3) whether the denial was arbitrary or capricious. We affirm the trial court on each

issue.[1]

## I.

Travelers issued a group accidental death policy through the Indiana Manufacturers' Association, Inc. The policy was made available to Donald by his employer, Wabash Tape Corporation. The policy provides $100,000 if the employee dies through accidental means and within ninety days of the date of the accident. Donald disappeared in the waters of Lake Geneva, Wisconsin, in August 1981. His second wife, Deborah Siska, was the named beneficiary at the time of his disappearance.

Deborah requested proceeds payable under the policy. An examiner from Travelers' law department litigation unit concluded that he was "unable to make a determination from the information . . . received to date, whether or not Donald J. Siska suffered an accidental death . . .." Deborah was denied the proceeds of the policy.

Deborah then commenced this action. Travelers attempted to remove the case to federal court. The federal district court stated that the purchase of the insurance through a multi-employer trust was a plan within the meaning of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. sec. 1001 *et seq.* The federal district court held that the action was preempted by 29 U.S.C. sec. 1144(a) and was removable to federal court. However, Travelers waived its right to remove by not doing so within thirty days of filing the action. Because

---

[1]Because we affirm the judgment of the trial court and do not remand, we do not address two issues raised by the parties: (1) whether Deborah is entitled to a jury trial; and (2) whether she is the proper beneficiary of the accidental death policy.

this case invoked concurrent jurisdiction under 29 U.S.C. sec. 1132(e), the case was remanded to the Wisconsin trial court.

The trial court found that state law was preempted. *See* 29 U.S.C. sec. 1144(a). This decision is not challenged. The trial court held that an arbitrary and capricious standard of review, rather than *de novo* review, applied to Travelers' denial of benefits and ordered summary judgment in favor of Travelers. The trial court instructed Travelers to consider new evidence produced by Deborah and dismissed the action with prejudice.[2] Deborah's claim that Travelers had a conflict of interest was not considered by the trial court.

## II.

The first issue is the standard of review that this court must use to review Travelers' decision to deny benefits. This is a civil action to recover benefits due under the terms of an ERISA plan. *See* 29 U.S.C. sec. 1132(a)(1)(B). ERISA does not set out the standard of review for actions under 29 U.S.C. sec. 1132(a)(1)(B) challenging benefit eligibility determinations. *QuesTech, Inc. v. Hartford Accident & Indem. Co.,* 713 F. Supp. 956, 962 (E.D. Va. 1989).

Benefit denials can be based on an administrator's factual findings or based on the administrator's interpretation of the benefit plan. Until recently, the clear weight of federal authority gave deference to the plan administrator's decision as long as it was not arbitrary

---

[2]The order for judgment states:

IT IS HEREBY FURTHER ORDERED that this matter be remanded to the Travelers so that the plaintiff can submit additional evidence in support of her claim for accidental death benefits under Travelers' group policy. Any such evidence is to be submitted no later than May 19, 1990.

18

and capricious. *Guisti v. General Elec. Co.,* 733 F. Supp. 141, 145 (N.D. N.Y. 1990). The arbitrary and capricious standard was applied whether the decision was based on factual findings or on an interpretation of the benefit plan. *See, e.g., Bance v. Alaska Carpenters Retirement Plan,* 829 F.2d 820, 822-23 (9th Cir. 1987) (benefits denied based on an interpretation of the plan); *LeFebre v. Westinghouse Elec. Corp.,* 747 F.2d 197, 202 (4th Cir. 1984) (benefits denied based on factual findings).

The United States Supreme Court rejected the uniform application of a deferential standard of review of benefit denials in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). However, the scope of *Firestone*'s holding is uncertain and has given rise to a split within the federal courts. The split concerns the question of whether *Firestone* applies only to benefit denials based on an interpretation of the benefit plan or to those denials based on factual findings as well.

In *Firestone,* the Firestone Tire and Rubber Company maintained a termination pay plan for its employees. The plan was an employee benefit plan under 29 U.S.C. sec. 1002(3) and thus fell within the scope of ERISA. Firestone was the administrator and fiduciary of the plan. Firestone sold its plastics division to Occidental Petroleum. Several employees retained by Occidental filed for termination benefits from Firestone. Their benefits were denied because the sale of the plastics division did not constitute a "reduction in work force" under the termination plan. *Firestone,* 489 U.S. at 106.

The lower federal court used the arbitrary and capricious standard. The Supreme Court held that *de novo* review is the proper standard of review. *Id.* at 115. The Court reasoned that the general principles of trust law should govern and fashioned the following rule:

19

A denial of benefits challenged under sec. 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Id.*

The federal courts are split on whether the application of *Firestone*'s rule extends to situations where benefits are denied based on the administrator's factual findings. One line of cases reads *Firestone* narrowly and limits the rule to situations where the plan administrator denies benefits based on an interpretation of the benefit plan. *QuesTech,* 713 F. Supp. at 962–63; *Barish v. United Mine Workers of America Health and Retirement Fund,* 753 F. Supp. 165, 168 (W.D. Pa. 1990). Other federal cases read *Firestone*'s rationale to apply equally to denial of benefits based on factual findings.[3] *Guisti,* 733 F. Supp. at 147–48; *Buchholz v. General Elec. Employee Benefit Plan,* 720 F. Supp. 102, 104–05 (N.D. Ill. 1989); *Newell v. Prudential Ins. Co. of America,* 725 F. Supp. 1233, 1240–41 (N.D. Ga. 1989), *modified,* 904 F.2d 644 (11th Cir. 1990).

---

[3]Many cases do not address the distinction between factual findings and plan construction, and base the analysis on whether the benefit plan vests the administrator with discretion. Thus, such cases are inapplicable to our analysis. *See, e.g., Moon v. American Home Assurance Co.,* 888 F.2d 86, 88 (11th Cir. 1989); *Bali v. Blue Cross & Blue Shield Ass'n,* 873 F.2d 1043, 1047 (7th Cir. 1989); *Boyd v. Trustees of United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir. 1989). The cases which clearly deal with plan interpretation are also inapplicable. *See, e.g., Parsons v. West Virginia Works Hourly Employees Pension Plan,* 879 F.2d 130, 131–32 (4th Cir. 1989); *Brown v. Ampco-Pittsburgh Corp.,* 876 F.2d 546, 549 (6th Cir. 1989).

The introductory language in *Firestone* is one of the strongest reasons for its narrow application. *See Petrilli v. Drechsel,* 910 F.2d 1441, 1446 (7th Cir. 1990). The Supreme Court wrote: "The discussion which follows is limited to the appropriate standard of review in sec. 1132(a)(1)(B) actions challenging denials of benefits based on *plan interpretations." Firestone,* 489 U.S. at 108 (emphasis added). This statement and the holding can be interpreted to mean that *de novo* review is appropriate only for the non-discretionary decisions of the administrator when the administrator denies benefits based on an interpretation of the benefit plan. Thus, denial of benefits based on factual findings, and not based on a plan interpretation, are exempt from *de novo* review.

After careful consideration of the decisions interpreting *Firestone* and the arguments presented by the federal courts, we adopt the narrower reading of *Firestone.* Thus, we hold that because there is no dispute over the terms of the accidental death policy, and the only dispute lies in the correctness of factual findings made by Travelers, our review is limited to whether Travelers' decision was arbitrary and capricious.

Deborah argues that, despite our interpretation of *Firestone,* no deference should be given to Travelers because Travelers has a potential conflict of interest in making a determination which would cost Travelers $100,000. Deborah argues that a *de novo* review should apply because of the potential conflict of interest. We disagree.

This case presents a potential conflict of interest. We agree with *Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556 (11th Cir. 1990), in which the court stated:

21

> Because an insurance company pays out to benefi-
> ciaries from its own assets rather than the assets of a
> trust, its fiduciary role lies in perpetual conflict with
> its profit-making role as a business. That is, when an
> insurance company serves as ERISA fiduciary to a
> plan composed solely of a policy or contract issued by
> that company, it is exercising discretion over a situa-
> tion for which it incurs "direct, immediate expense as
> a result of benefit determinations favorable to [p]lan
> participants."

*Id.* at 1561 (quoting *De Nobel v. Vitro Corp.,* 885 F.2d 1180, 1191 (4th Cir. 1989)). Travelers, the fiduciary in this case, is the insurer whose own funds would be used to satisfy the claim. It can directly benefit from not disbursing the benefits under the policy.

Despite this potential conflict of interest, however, federal law does not require that a *de novo* standard of review be substituted for an arbitrary and capricious standard of review. Although *Brown* articulated the potential conflict of interest, it maintained the more deferential standard of review. The court held that the application of the arbitrary and capricious standard is "shaped by the circumstances of the inherent conflict of interest." *Brown,* 898 F.2d at 1563.

In *Van Boxel v. Journal Company Employees' Pension Trust,* 836 F.2d 1048 (7th Cir. 1987), the court was asked to abandon the arbitrary and capricious standard in cases where there is a conflict of interest. The court refused, and stated that "flexibility in the scope of judicial review need not require a proliferation of different standards of review; the arbitrary and capricious standard may be a range, not a point." *Id.* at 1052. The court stated that the arbitrary and capricious standard is flexible and allows the reviewing court to make the necessary

22

adjustments for possible bias in a trustee's decision. *Id.* at 1053. The federal courts have accepted this flexible standard. *See, e.g., Sage v. Automation, Inc. Pension Plan & Trust,* 845 F.2d 885, 895 (10th Cir. 1988).

Furthermore, dicta in *Firestone* may be instructive. The Supreme Court stated that in cases where the benefit plan vests discretion in the administrator to interpret the plan and there is a potential conflict of interest, that conflict must be weighed as a factor to determine whether there was an abuse of discretion. *Firestone,* 489 U.S. at 115. The application of the standard to the particular case is the same whether the use of the arbitrary and capricious standard is determined by discretion vested by a plan, or because the denial is based on factual determinations. Thus, a potential conflict of interest does not change the standard of review, but it becomes a factor in determining if the administrator acted arbitrarily and capriciously.

III.

The second issue concerns the scope of the court's review. The federal law clearly holds that review is limited to the record before the administrator at the time the benefits were denied. *QuesTech,* 713 F. Supp. at 962; *Wardle v. Central States, S.E. & S.W. Areas Pension Fund,* 627 F.2d 820, 824 (7th Cir. 1980), *cert. denied,* 449 U.S. 1112 (1981).

Furthermore, federal courts have ruled that it is error to admit new evidence when reviewing an administrator's decision under the arbitrary and capricious standard. *Berry v. Geigy Corp.,* 761 F.2d 1003, 1007 (4th Cir. 1985). If the court believes the administrator lacked adequate evidence, or should the beneficiary wish to present

additional information, the proper course is to remand to the trustees for a new determination. *See id.*

Any other rule would be incongruous. It would be difficult to determine if an administrator acted arbitrarily and capriciously by relying on information unavailable to the administrator at the time of the decision. Thus, any appellate review is limited to the record before the administrator. It was proper for the trial court to return the case to Travelers for consideration of new evidence.[4] Furthermore, our review is limited also to the record before Travelers.

## IV.

The third issue is whether Travelers' decision to deny benefits to Deborah was arbitrary and capricious. The decision by Travelers must be supported by substantial evidence. *Wardle,* 627 F.2d at 824. Based on the evidence before Travelers and its potential conflict of interest, we conclude that the decision was not arbitrary and capricious.

Travelers hired an investigation service to investigate Donald's disappearance. The service conducted many interviews and a credit check. The investigation yielded the following information, although some witnesses gave inconsistent statements. Donald had worked for Wabash Tape Corporation for three years and was

---

[4]Deborah argues that the trial court erred in not retaining jurisdiction when remanding to Travelers. On review of a trial court's decision whether to retain jurisdiction, this court must determine whether the trial court abused its discretion. *White v. Ruditys,* 117 Wis. 2d 130, 135, 343 N.W.2d 421, 423 (Ct. App. 1983). Because this case could be ongoing due to the potential new evidence, judicial economy supports the trial court's decision to not retain jurisdiction over this matter.

considered a satisfactory employee. His absentee, sick leave and health records were good. He appeared happy and was doing well at work. In addition to the Travelers policy, he had a group life insurance policy through Wabash for the amount of $92,700, three times his annual salary.

Donald and his second wife, Deborah, and four friends went sailing on Lake Geneva in August, 1981. Witnesses gave different statements as to the amount of alcohol the passengers consumed. The lake was rough, and it was overcast and windy. The passengers were dressed in several layers of clothing. In the afternoon, Donald removed his outer layer of clothing and jumped off the boat to retrieve a cap which had blown overboard. One witness stated that Donald wanted to go swimming all day. Once in the water and near the cap, Donald gave a salute to the other passengers. There were other boats in the area.

The boat was a distance from the shore and the water was about 140 feet deep where Donald jumped. The operator of the boat was unable to start the engine, and by the time the sails were up and the boat had sailed toward Donald, he had disappeared. Donald was not seen in any distress or in peril prior to his disappearance. There is no indication that he yelled for help.

A surface search was commenced immediately, and a dragging search continued for five days. Sonar was employed in the search for the body. An underwater search was conducted by a friend of one of the daughters. All searches were unsuccessful; Donald's body was never found.

At the time of Donald's disappearance, he had been divorced from his first wife for about five months. There were five children from his first marriage. As part of the divorce settlement, Donald agreed to pay outstanding

bills of the marriage and child support of $340.02 every two weeks. His net income was $808.64 every two weeks.

Donald's ex-wife stated that he hated swimming and had an aversion to water. She stated that during their marriage, she rarely saw him participate in water activities. Deborah stated that he was a good swimmer. The passengers on the boat claimed that he was an experienced swimmer, while his employer labeled him as a boating and swimming enthusiast. Donald's ex-wife told investigators that Donald had been named after an uncle who had also disappeared.

An extensive credit search revealed that Donald had debts of over $10,000. There were delinquent credit card accounts and orthodontic bills, and a history of late payments. After his disappearance, his automobile was repossessed by the bank. His ex-wife stated that he was late in child support payments and that the Internal Revenue Service contacted her about Donald's tax arrearage.

The investigation further revealed that the divorce decree required Donald to maintain life insurance policies existing at the time of the divorce and to make his children beneficiaries. However, the Travelers policy was not included in the list of policies. He named Deborah as the beneficiary after the divorce was finalized, which was four months before he disappeared.

Travelers concluded that Donald had a motive to stage his disappearance and that the evidence was insufficient to show that Donald accidentally drowned. Based on the evidence available to Travelers at the time of the decision, we cannot say that the decision was arbitrary and capricious, even with the potential conflict of interest. The facts and the inconsistencies among the witnesses as to the sailing events, Donald's personal life and

Donald's financial status provide substantial support for Travelers' inability to conclude that Donald accidentally drowned. Although as the original trier of fact we might have decided differently, we cannot overturn Travelers' decision. However, new evidence in the future may dictate a different decision by Travelers.

*By the Court.*—Judgment affirmed.