944 F.2d 1176
 60 USLW 1477, 14 Employee Benefits Cas. 1477
 Diane C. LUBY
v.
TEAMSTERS HEALTH, WELFARE, AND PENSION TRUST FUNDS, Charles
J. Schaffer, Jr., and Patricia J. Golosky,
Patricia J. Golosky, Appellant.
Diane C. LUBY
v.
TEAMSTERS HEALTH, WELFARE, AND PENSION TRUST FUNDS, Charles
J. Schaeffer, Jr., and Patricia J. Golosky,
Teamsters Health & Welfare Fund of Philadelphia & Vicinity
and Charles J. Schaeffer, Jr., Appellants.
 Nos. 90-1900, 90-1912.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
 May 9, 1991.
Sept. 20, 1991.
 
 Howard M. Goldsmith, Goldsmith & Hoffman, Philadelphia, Pa., for appellant Golosky.
 James D. Crawford, James J. Leyden, Frank C. Sabatino, Louis D. Lappen, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellants Teamsters Health, Welfare & Pension Trust Fund and Charles J. Schaffer, Jr.
 Jon Marshall, Philadelphia, Pa., for appellee.
 Before MANSMANN, ROSENN, and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge:
 
 
 1
 In this Employee Retirement Income Security Act of 1974 action the threshold issue on appeal is the proper standard and scope of review to be exercised by the district court over a fact based beneficiary determination made by a Teamsters Health & Welfare Fund Administrator. The district court exercised de novo review, awarded the retirement Fund death benefits to the decedent's wife and directed restitution of the benefit payment to the Fund be made by the unqualified payee.
 
 
 2
 We decide that the de novo standard of review mandated by Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) for ERISA benefit denials based on plan interpretation extends as well to beneficiary decisions based upon purely factual questions. Thus, we conclude that the district court properly exercised de novo review, that restitution is proper and supported by the evidence, and will affirm.
 
 I.
 
 3
 Francis Luby, Jr., died in 1988. Although Luby and his wife Diane separated in 1974, they never divorced. Francis Luby lived with Patricia Golosky for eleven years, until shortly before his death.
 
 
 4
 Because Francis Luby was a participant in the Teamsters Health and Welfare Fund of Philadelphia and Vicinity, his beneficiary is entitled to a $20,000 lump sum death benefit. The Fund requires that participants fill out a beneficiary card, kept on file at the Fund office. The problem here is when Francis Luby died, there were two beneficiary cards on file. To compound the problem, the first card, signed by Luby in 1968, designated his wife as beneficiary; the second, filed in 1987, designated his girlfriend.
 
 
 5
 When a Fund member has more than one beneficiary card on file, Fund policy requires that benefits be paid to the beneficiary named on the most recent valid card. Fund guidelines also require that beneficiaries apply to the Fund to receive death benefits.
 
 
 6
 Shortly after Luby died, Mrs. Luby visited the Fund office and filed a claim for the death benefit. Instead of paying her, the Fund paid the $20,000 death benefit to Golosky, the designee on the most recent beneficiary card.[1] Golosky had not filed a claim with the Fund.
 
 
 7
 Mrs. Luby then filed a complaint for wrongful denial of death benefits in Pennsylvania state court against Golosky, the Fund and its Administrator. She alleged that the card designating Golosky as beneficiary was not valid because it had not been signed by her husband. The Fund removed the case to federal district court under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Also, the Fund and the Administrator (collectively the "Fund") filed a cross-claim for restitution against Golosky in the event Mrs. Luby prevailed. Golosky filed a responsive cross-claim against the Fund, asserting that if Mrs. Luby is entitled to the death benefit, Golosky is entitled to damages from the Fund because it was negligent in providing Francis Luby with ambiguous or otherwise improper designation of beneficiary forms.
 
 
 8
 After a bench trial, the district court decided that Mrs. Luby was entitled to the death benefit, with interest, and that the Fund was entitled to restitution from Golosky. The district court further concluded that Golosky's cross claim against the Fund was without merit. Golosky and the Fund appealed.
 
 II.
 
 9
 Our threshold issue is whether the district court erred by exercising de novo review over the Fund Administrator's decision to pay death benefits to Golosky. ERISA is silent on the proper standard by which the district court should review fact findings made by plan administrators, such as here where there is a dispute between two potential beneficiaries, and challenged under 29 U.S.C. § 1132(a)(1)(B). Before 1989, nearly all federal courts reviewing ERISA administrator's benefit denials adopted the arbitrary and capricious standard used to review trustee decisions under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c).
 
 
 10
 In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989), the Court rejected the wholesale adoption of the LMRA's arbitrary and capricious standard by courts reviewing ERISA administrator benefit decisions. The Court concluded that the LMRA's deferential standard of review was untenable in ERISA contexts because it afforded less protection to beneficiaries than before ERISA's enactment, contravening ERISA's goal of protecting the interests of Plan members and their beneficiaries. Firestone, 489 U.S. at 109-110, 109 S.Ct. at 953-954.
 
 
 11
 When a plan does not grant an administrator discretion to interpret ambiguous plan terms, the Court held that an administrator's denial of benefits would not be reviewed under an arbitrary or capricious standard.
 
 
 12
 [A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard, unless the benefit plan gives the administrator authority to determine eligibility for benefits or to construe the terms of the plan.
 
 
 13
 Firestone, 489 U.S. at 115, 109 S.Ct. at 956-957.
 
 
 14
 Hence, we must first decide whether the terms of this Plan grant the Administrator discretion to act as a finder of facts to decide who Luby's lawful beneficiary really was, thus warranting deference for his decision to pay the death benefit to Golosky. We conclude that the Plan neither expressly nor impliedly grants such discretion.
 
 A.
 Administrator Discretion Under the Plan
 
 15
 Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan. Drawing from trust law principles, the Court in Firestone noted that the terms of the plan are construed without deferring to either party's interpretation. 489 U.S. at 112, 109 S.Ct. at 955. "The terms of trusts created by written instruments are 'determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust is not inadmissable.' " Id. (quoting Restatement (Second) of Trusts § 4, comment d (1959)).
 
 
 16
 Here the Fund admits that the terms of the Plan do not specifically grant the Plan Administrator authority to make beneficiary determinations. The Fund contends that the Plan, taken as a whole, impliedly grants the Administrator authority to do so.
 
 
 17
 Discretionary powers may be implied by a plan's terms even if not granted expressly. See De Nobel v. Vitro Corp., 885 F.2d 1180, 1187 (4th Cir.1989) (no "magic words," such as "discretion is granted ...," need be expressly stated in order for the plan to accord the administrator discretion to interpret plan terms and to hear and decide disputes between persons alleging themselves to be beneficiaries, so long as the plan on its face clearly grants such discretion). Nonetheless, we are not persuaded that the Plan impliedly grants the Administrator authority to make beneficiary determinations.
 
 
 18
 The Fund contends that specific language in the original Declaration of Trust authorized the Trustees at the time the Fund was established to "consider and decide upon a program for payment of benefits from the Trust Fund ..." Declaration of Trust, p 9, JA at 338-39. The Fund points out that, in addition to establishing a system of fund administration at the time of the Trust's creation, the Trustees have discretion to amend the Declaration of Trust, and thus, could amend the system of Trust administration. See Declaration of Trust, p 3 & 4, JA at 338. The Fund contends that this general grant of broad administrative power upon the Trustees carries with it the implication that the Fund Administrator has discretion to interpret Plan language and decide disputes between Plan beneficiaries. We agree with the district court that "[t]he language quoted by the Fund merely gives the Trustees discretion to select a system of Trust administration." District court order and memorandum at 5, 1990 WL 181053.
 
 
 19
 In particular, the Plan's general grant of administrative powers to Plan Trustees does not refer specifically to any power to decide disputes between beneficiary claimants. Likewise, the Plan neither states nor implies that fact-based beneficiary determinations are to be accorded deference on review. If a plan's grant of general administrative power is construed to be the general grant of discretionary power to decide all disputes arising under the Plan, then an ERISA plan administrator's decisions might all be subject to deferential review. Such a conclusion would defeat the Supreme Court's purpose in Firestone: to insure that when a plan's terms do not confer certain discretionary powers on a plan trustee, a trustee's exercise of such discretion is subject to de novo review.
 
 
 20
 The Fund also argues that because the Declaration of Trust expressly granted Trustees discretionary authority in a number of specified areas, similar discretion is impliedly granted in other unspecified areas of Plan administration. We are not persuaded. Nothing in the Declaration of Trust grants the Trustees or Administrator discretionary authority to decide disputes between beneficiary claimants. We reject the Fund's argument that because the Declaration of Trust expressly grants Trustees discretion in certain, specified areas, "it is nothing less than absurd to suggest that the same settlors which entrusted broad discretion to the Trustees in all other phases of Fund administration ... would deny this same discretion in resolving a dispute between [benefit claimants]." Fund Brief at 26. Far from "absurd", we believe that the settlor's express grant of discretion in certain areas of Fund administration and silence as to others strongly supports the conclusion that had the settlors intended to grant Trustees discretionary authority to decide among disputed beneficiaries on a case-by-case basis, they knew how to say so and would have expressly done so.
 
 
 21
 Finally, the Fund points to provisions in the Plan's Benefit Book giving benefit claimants the option of challenging claim denials through arbitration. If a claimant submits a benefit dispute to arbitration, the Benefit Book states that the question for the arbitrator shall be whether the Trustees made a legal error, "acted arbitrarily or capriciously in the exercise of their discretion" or whether findings of fact are supported by substantial evidence. Id. The Fund argues that the arbitrary and capricious standard to be employed by an arbitrator of a disputed claim demonstrates that the settlors of the Fund intended that the Administrator have discretion to decide among disputed beneficiaries.
 
 
 22
 The argument fails for two reasons. First, the arbitrary and capricious standard of review applies expressly to only those areas where the Trustees "exercise ... their discretion." Given that Plan Trustees are expressly granted discretionary authority to exercise certain specified powers, not among them the power to decide disputed issues of fact and designate a lawful beneficiary, the quoted language hardly indicates that resolving benefit disputes was intended to be a discretionary function of the Administrator. Second, these provisions granting claimants the option of arbitration is, as the Fund admits, not a mandatory requirement that must be exhausted before a claimant may file an action under 29 U.S.C. § 1132(a)(1)(B).[2] The provisions pointed to by the Fund encourage claimants to pursue arbitration over litigation; they are not persuasive indicators of the settlor's intent regarding Administrator discretion.
 
 
 23
 We agree with the district court's conclusion that the Plan neither expressly nor impliedly grants the Administrator discretion to decide between beneficiary claimants on a case-by-case basis nor requires deference to the Administrator's factual determinations.
 
 B.
 
 24
 The Standard of Review Over Plan Administrator's Factual
 
 Determinations
 
 25
 The district court concluded that Firestone required that the Administrator's decision be reviewed de novo. In Firestone, however, the Plan Administrator's benefit denial turned on the interpretation of ambiguous plan terms.[3] Here, the Administrator's decision to pay the death benefit to Golosky, rather than to Mrs. Luby, did not require that he interpret Plan language. Rather, the Plan clearly required that the death benefit be paid to the beneficiary listed on the most recent, valid benefit card on file. The dispute created by Mrs. Luby's challenge to the Administrator's decision to pay the death benefit to Golosky is factual: which beneficiary card, the original 1968 card designating Mrs. Luby, or the most recent card designating Golosky, was the valid, controlling document?
 
 
 26
 The question now before us is whether Firestone's de novo review of benefit denials based upon administrator interpretations of ERISA plan terminology extends to designating a lawful beneficiary through hearing and factfinding. We specifically left this question open in Bruch v. Firestone Tire and Rubber Co., 828 F.2d 134 (3d Cir.1987), aff'd in relevant part, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989): "[i]t should be noted that we also do not deal here with a determination of fact by a plan administrator. We leave for another day the definition of the context, if any, in which courts should defer to such a determinations [sic]." 828 F.2d. at 144 n. 9. The day has come.
 
 
 27
 At the outset, we note that few federal courts have addressed the question of whether the de novo standard mandated by Firestone to review a plan interpretation extends to fact findings as well.[4] Those courts that have are divided.[5]
 
 
 28
 The split among federal courts on this question results from divergent readings of the scope of Firestone 's holding. Early in its opinion, the Supreme Court noted that "[t]he discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations." Firestone, 489 U.S. at 108, 109 S.Ct. at 953 (emphasis added). The problem however is that the Court's later holding is not expressly limited: "we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone, 489 U.S. at 115, 109 S.Ct. at 956 (emphasis added).
 
 
 29
 Courts concluding that Firestone 's holding does not extend to fact finding opine that the holding's apparent application to denials based upon any type of eligibility determination can only be understood in conjunction with the Court's statement limiting the scope of its analysis and the sentence immediately preceding the holding: "As this case aptly demonstrates, the validity of a claim to benefits is likely to turn on the interpretation of terms in the plan at issue." Firestone, 489 U.S. at 115, 109 S.Ct. at 956 (emphasis added).
 
 
 30
 In Pierre v. Connecticut General Life Ins. Co., 932 F.2d 1552, 1561 (5th Cir.1991), the court concluded "the specific language chosen by the Supreme Court in [the sentence immediately preceding the Court's holding] ... when read with the earlier statement defining the scope of the issue before the Court, allows but one conclusion: the Bruch holding decided only those like instances where the facts are not in dispute and recovery of benefits is dependent solely on the fiduciary's interpretations of plan terms " (emphasis in original).[6]
 
 
 31
 We are not persuaded by attempts to reconcile Firestone 's holding with its earlier statement limiting the scope of its discussion. Rather, we agree with the Court of Appeals for the Seventh Circuit that the clear statement of the holding in Firestone
 
 
 32
 strongly suggests that the Court intended de novo review to be mandatory where administrators were not granted discretion, regardless of whether the denials under review were based on plan interpretations. If this were not the intent, the Court could simply have omitted the words "to determine eligibility for benefits," from the above-quoted holding and confined the "unless" clause to "unless the benefit plan gives the administrator or fiduciary discretionary authority to construe the terms of the plan."
 
 
 33
 Petrilli v. Drechsel, 910 F.2d 1441, 1446 (7th Cir.1990) (dictum).
 
 
 34
 We agree that "[i]t is a truism that language in the Supreme Court's opinions should not readily be assumed to be superfluous, and ... the explicit reference to 'eligibility' in the holding is more telling than the lack of any such reference in other passages." Barish, 753 F.Supp. 165, 169 (W.D.Pa.1990) (citation omitted). Furthermore, we read the sentence limiting the scope of the Firestone Court's discussion as intended to distinguish between remedial actions challenging claim denials brought under 29 U.S.C. § 1132(a)(1)(B) and remedial actions based on or brought under other ERISA provisions. The sentence immediately following the Court's statement of limited scope emphasizes this focus: "We express no view as to the appropriate standard of review for actions under other remedial provisions of ERISA." Firestone, 489 U.S. at 108, 109 S.Ct. at 953. Reading these two sentences in conjunction downplays the importance of the "... based upon plan interpretations" clause in the sentence limiting the Court's analysis, and accentuates the intended distinction between actions based on 29 U.S.C. § 1132(a)(1)(B) and those based on other ERISA provisions.
 
 
 35
 We are likewise not convinced by the rationale of other courts holding that administrator's factual determinations should be subject to deferential review. Plan administrators are not governmental agencies who are frequently granted deferential review because of their acknowledged expertise. Administrators may be laypersons appointed under the plan, sometimes without any legal, accounting, or other training preparing them for their responsible position, often without any experience in or understanding of the complex problems arising under ERISA, and, as this case demonstrates, little knowledge of the rules of evidence or legal procedures to assist them in factfinding.
 
 
 36
 We hold that an ERISA plan administrator's decision as to entitlement between beneficiary claimants based solely on factual determinations is to be reviewed de novo. We believe that this is consistent with Firestone and its emphasis on the goals of ERISA: to protect the interests of plan members and their beneficiaries. We believe these interests are better served when plan administrator's factual determinations are accorded no deference, but subject to de novo review.[7] We now turn to the nature of this de novo review.
 
 III.
 
 37
 At the bench trial, no witness directly identified the signatures on either the 1968 or 1987 benefit card. In order to determine the validity of the benefit cards, the district court examined a number of documents signed by Francis Luby that were not before the Plan Administrator. Based upon a comparison of these other documents, the district court found that Francis Luby signed the original 1968 beneficiary card but did not sign the 1987 benefit card. The Fund argues that the district court erred by reviewing the additional documents signed by Luby because they were not before the Plan Administrator.
 
 
 38
 Firestone does not specify the evidentiary scope of the district court's de novo review of administrator benefit decisions. Following pre-Firestone decisions holding that evidence not before the plan administrator could not be considered upon deferential review of ERISA benefit determinations, some courts have decided that the de novo review of a plan administrator's decision must be limited to a review of the evidence before the administrator.[8]
 
 
 39
 Limiting the review of an ERISA benefit decision to evidence before the administrator was appropriate in those pre-Firestone cases where a deferential standard of review was applied. The limitation makes little sense, however, when a plan administrator's decision is reviewed de novo. So limiting the scope is "contrary to the concept of de novo review." Moon v. American Home Assurance Co., 888 F.2d 86, 89 (11th Cir.1989). "De novo means here, as it ordinarily does, [that] ... the court's inquiry is not limited to or constricted by the ... record, nor is any deference due the ... conclusion [under review]." Doe v. United States, 821 F.2d 694, 697 (D.C.Cir.1987) (emphasis added) (noting that for the review of administrative decisions, "the reviewing court is not confined to the ... record, but may pursue whatever further inquiry it finds necessary or proper to the exercise of the court's independent judgment." Id. at 698 n. 9 (treatise citation omitted)).
 
 
 40
 We hold that a district court exercising de novo review over an ERISA determination between beneficiary claimants is not limited to the evidence before the Fund's Administrator.[9] Accordingly, the district court did not err by considering documents not before the Fund's Administrator.
 
 
 41
 Our decision does not require that a district court conduct a de novo evidentiary hearing or full trial de novo in making a determination between ERISA claimants. If the record on review is sufficiently developed, the district court may, in its discretion, merely conduct a de novo review of the record of the administrator's decision, making its own independent benefit determination.[10] See McMahan v. New England Mut. Life Ins. Co., 888 F.2d 426, 431 (6th Cir.1989) (where the record was insufficiently developed for review of a fact based benefit denial, the court remanded for the district court to "supplement the record" and then make a de novo benefit determination).[11]
 
 
 42
 Admitting evidence not considered by the plan administrator is crucial in cases, such as this, where there is no evidentiary record to review. Here, the Fund determined that Golosky was the proper beneficiary merely by noting that she was named on the most recent benefit card in Francis Luby's file. The Fund does not authenticate members' signatures on benefit cards either when the cards are filed or when benefits are paid. There was simply no evidentiary record for the district court to review for Mrs. Luby's claim that the most recent beneficiary card was not signed by Francis Luby and was therefore invalid. See Masella v. Blue Cross & Blue Shield of Connecticut, Inc., 936 F.2d 98, 104 (2d Cir.1991) (the plan administrator's failure to conduct a review of the current state of medical research to determine whether a plan term should be interpreted to provide coverage for the beneficiary's medical condition left the district court with "no real ... claim record ... for [the district court] to review de novo; " the district court's review of scientific evidence not considered by the administrator was therefore warranted.)[12]
 
 
 43
 Appellants' contention that the district court's decision is not supported by sufficient evidence is without merit. The documents signed by Luby and the testimony about discrepancies between the signatures on the two benefit cards were sufficient evidence to support the district court's decision to award the benefits to Mrs. Luby.[13]
 
 IV.
 
 44
 Golosky argues that even if Mrs. Luby was entitled to the death benefit, the Fund is not entitled to restitution because payment resulted from the Fund's negligence.[14] We exercise plenary review of the district court's legal conclusions that restitution was an appropriate remedy. If the district court did not err in its legal conclusions, our review of the district court's assessment of the equities is for abuse of discretion. See EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 81 (3d Cir.), cert. dismissed, 469 U.S. 925, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984).
 
 
 45
 Although ERISA itself does not explicitly provide a statutory right of restitution, it is clear that Congress intended federal courts to fashion a federal common-law under ERISA, and this permits application of a federal common-law doctrine of unjust enrichment if restitution would not override a contractual provision of an ERISA plan. If federal common-law restitution would contravene a term of an ERISA plan, it will be permitted only if there is a "particularly strong affirmative indication that such a right would effectuate a statutory policy." Van Orman v. American Ins. Co., 680 F.2d 301, 312-313 (3d Cir.1982).
 
 
 46
 We have held that federal common-law restitution is available to employers to recover mistakenly paid pension fund contributions, unless restitution would result in underfunding of the ERISA plan. Plucinski v. I.A.M. Nat. Pension Fund, 875 F.2d 1052, 1057-58 (3d Cir.1989). General equitable principles govern such federal common-law actions for restitution. Id. Such federal common law of restitution under ERISA should be used to "fill in interstices of ERISA and further the purposes of ERISA." Id. at 1058 (citation omitted).
 
 
 47
 Based upon our recognition in Plucinski that employers are entitled to restitution for mistaken overpayments to ERISA plans (even where ERISA specifically provides that the assets of an ERISA trust fund shall never benefit employers, see 29 U.S.C. § 1103(c)), we hold here that an ERISA fund itself should receive the same equitable remedy to recover mistaken payments out of the corpus of the trust. To permit restitution here would only further the goals of ERISA, that is to safeguard the corpus of funds set aside under the Teamsters Plan for valid Teamster Fund beneficiaries.
 
 
 48
 Since Mrs. Luby was entitled to the death benefit, it follows that the Fund must have erroneously paid Golosky. Hence, the Fund may be entitled to restitution unless the relevant law would make restitution inequitable in light of the Fund's negligence, if any.
 
 
 49
 Although Golosky's crossclaim against the Fund sounds in negligence, the district court opinion never expressly addressed whether the Fund's negligence, if any, caused the mistaken payment to Golosky instead of Mrs. Luby. But that does not matter. The district court's restitution order properly relied on Traveler's Equities Sales, Inc. v. Wasserman, 1989 WL 41428, 1989 U.S.Dist. LEXIS 4136 (E.D.Pa. April 20, 1989), aff'd without opinion, 891 F.2d 283 (3d Cir.1989), and Airco Industrial Gases, Inc. v. Teamsters Pension Trust Fund of Philadelphia, 668 F.Supp. 893 (D.Del.1987), aff'd in relevant part, 850 F.2d 1028 (3d Cir.1988), for the proposition that under the federal common law of unjust enrichment, restitution of a mistaken payment is permitted even if payment was caused by the negligence of the party seeking restitution.[15]
 
 
 50
 Indeed, Airco, 668 F.Supp. 893, indicates that in an equitable action for restitution of a payment mistakenly made by an employer to an ERISA plan,
 
 
 51
 [w]hether one party should have discovered the mistake is immaterial ... because the mere fact of a mistake having been made permits [the] Court to determine the question of restitution. The status of the mistake as unilateral or bilateral does not affect this analysis.
 
 
 52
 Id. at 894 n. 1 (emphasis added). Thus, an order of restitution does not depend on whose mistake caused the erroneous payment.
 
 
 53
 Likewise, the Court of Appeals for the Fourth Circuit has permitted an ERISA fund to recover from persons unjustly enriched by payments out of such funds, even if the funds' own negligence was responsible for the overpayment and unjust enrichment. Provident Life & Accident Ins. Co. v. Waller, 906 F.2d 985 (4th Cir.), cert. denied, --- U.S. ---, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). In Provident Life, the Court allowed an ERISA plan administrator to recover funds paid to payee-beneficiary, despite the administrator's negligent failure to obtain an executed subrogation agreement from the payee-beneficiary. The Court held that equitable recovery of unjust enrichment by plan administrator would serve efficient plan administration and ERISA's goals.
 
 
 54
 We too believe that ERISA's goals of protecting the interests of Plan members and their beneficiaries justifies the district court's order of restitution.[16]
 
 V.
 
 55
 In conclusion, ERISA plan administrator's fact based determinations are to be reviewed de novo unless the plan specifically provides that his determinations of fact be given deference or grants the administrator authority to make determinations between death benefit claimants. Because the benefit Plan neither granted the Fund's Administrator discretion to hear and decide disputes between persons alleging themselves to be beneficiaries, or provided that the Administrator's factual determinations were to be given deference, the district court properly reviewed the benefit determination question de novo.
 
 
 56
 Because the scope of de novo review does not limit the district court to evidence before the plan administrator, the district court did not err by considering the evidence about the difference between the signatures on the beneficiary cards. The evidence was sufficient to support the district court's findings. Finally, we conclude that the district court did not err by awarding restitution to the Fund from Golosky.
 
 
 57
 We will therefore affirm the district court's decision in its entirety.
 
 
 
 [1]
 In its amended answer to Diane Luby's complaint and the Fund's crossclaim, Golosky admitted that she had signed Luby's name to the most recent beneficiary card, but she alleges as an alternative theory for recovery that Francis Luby had given her Power of Attorney to sign the card for him
 
 
 [2]
 The section of Benefit Book which discusses the arbitration option is preceded by a discussion of beneficiary rights under ERISA, including the provision of § 1132(a)(1)(b) establishing a cause of action for challenging claim denial. See JA at 316-17
 
 
 [3]
 In Firestone, the Administrator determined that the Plan's provisions for benefit coverage in the event of a "reduction in work force" did not apply to the loss of jobs resulting from a sale of a Firestone Division to another company. 489 U.S. at 106, 109 S.Ct. at 951
 
 
 [4]
 Following Firestone, a few federal courts have reflexively applied a de novo standard of review to plan administrator's factual determinations without addressing the question of whether Firestone 's scope is limited to reviews of eligibility decisions which turn on plan term interpretations. See Reinking v. Philadelphia American Life Ins. Co., 910 F.2d 1210, 1214 (4th Cir.1990); Brown v. Ampco-Pittsburgh Corp., 876 F.2d 546, 551 (6th Cir.1989)
 
 
 [5]
 Courts holding that ERISA plan administrator's factual determinations are to be reviewed deferentially rather than de novo include Pierre v. Connecticut General Life Ins. Co., 932 F.2d 1552, 1557-59 (5th Cir.1991); Barish v. United Mine Workers of America Health & Retirement Fund, 753 F.Supp. 165, 168-69 (W.D.Pa.1990); and Questech, Inc. v. Hartford Accident and Indem. Co., 713 F.Supp. 956, 962-63 (E.D.Va.1989). See also Moshin v. John Hancock Mutual Life Ins. Co., No. 88-60415, slip op. at 5-6 (E.D.Mich. Nov. 27, 1989)
 Courts holding that Firestone's de novo standard of review requirement applies to benefits denials based upon factual determinations as well as plan interpretations include Reinking v. Philadelphia American Life Ins. Co., 910 F.2d 1210, 1213-14 (4th Cir.1990); Giusti v. General Electric Company, 733 F.Supp. 141, 146-48 (N.D.N.Y.1990); Buchholz v. General Electric Employee Benefit Plan, 720 F.Supp. 102, 103 n. 1 (N.D.Ill.1989); and Newell v. Prudential Insurance Co. of America, 725 F.Supp. 1233, 1241 (N.D.Ga.1989) (aff'd in relevant part, 904 F.2d 644 (11th Cir.1990)). Although reversing the district court on different grounds, the Court of Appeals for the Seventh Circuit stated in dicta that it disagreed with the district court's conclusion that ERISA plan administrator's factual determinations should receive deferential review. See Petrilli v. Drechsel, 910 F.2d 1441, 1446 (7th Cir.1990).
 
 
 [6]
 The Pierre Court reasoned that Plan administrator's decisions whether to pay or deny benefit claims involve two separate determinations: a determination of the facts underlying the claim, and a determination whether the Plan's terms authorize payment under those facts. Pierre, 932 F.2d at 1556. The court concluded that Firestone 's de novo review requirement applied only to the second of these determinations. Id. See also Barish v. United Mine Workers of America Health & Retirement Fund, 753 F.Supp. 165, 169 (W.D.Pa.1990) (concluding that the seemingly broad language of Firestone 's holding should be read to extend only to eligibility determinations based on plan interpretations)
 
 
 [7]
 Our holding is also consonant with Firestone 's rejection of our previous distinction between review of administrator benefit denials based upon plan interpretations where there is no discernable conflict of interest on the part of the administrator and those situations where bias is readily apparent, especially where the employer is the fiduciary and administers a non-funded plan. See Bruch, 828 F.2d at 144-45. Were we to hold that administrator's factual determinations are to receive deferential review, we would have to make exception for situations where administrator bias is apparent, the very distinction rejected by the Court in Firestone, 489 U.S. at 115, 109 S.Ct. at 956
 
 
 [8]
 See Miller v. Metropolitan Life Ins. Co., 925 F.2d 979 (6th Cir.1991), Perry v. Simplicity Engineering, Div. of Lukens Gen. Indust., Inc., 900 F.2d 963, 967 (6th Cir.1990) ("the de novo standard of review ... does not mandate or permit the consideration of evidence not presented to the administrator"), and McMahan v. New England Mut. Life Ins. Co., 888 F.2d 426, 431 n. 1 (6th Cir.1989) (all citing the pre-Firestone decision of Crews v. Central States, 788 F.2d 332, 336 (6th Cir.1986)); Questech, 713 F.Supp. at 962 ("the review must be limited to the record before the administrator or fiduciary at the time the benefits decision was made") (citing the pre-Firestone decision of Voliva v. Seafarers Pension Plan, 858 F.2d 195, 196 (4th Cir.1988))
 Citing Perry, 900 F.2d at 966, the court in Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1460 (10th Cir.1991) held that "only the facts before the Administrators at the time of their decision" were to be considered on review of refusal to pay a portion of entitled benefits in corporate stock. The court in Woolsey, however, reviewed the administrator's decision under an arbitrary and capricious standard because the plan accorded the plan administrator discretion to the determine how to distribute benefits.
 
 
 [9]
 See Moon, 888 F.2d at 89 (the district court's review of a plan administrator's decision is not limited to the facts before the administrator)
 
 
 [10]
 As noted in Perry v. Simplicity Engineering, 900 F.2d 963, 966-67 (6th Cir.1990), de novo review "refer[s] both to review of the decision below based only on the record below and to review based on the record below plus any additional evidence received by the reviewing court" (citing 2 S. Childress & M. Davis Standards of Review § 15.2 (1986))
 
 
 [11]
 The court in McMahan, however, limited the development of the record to evidence before the plan administrator. See supra note 8
 
 
 [12]
 In Masella, 936 F.2d at 103-104, the court held that the district court did not err considering expert medical testimony not considered by the plan administrator because this evidence was presented only for the purpose of interpreting the plan terms, rather than "to establish a particular historical fact regarding the claimant['s] [eligibility]." Id. at 104. The Court expressly refused to decide whether the district court's de novo review would be limited to evidence before the plan administrator when the evidence was intended to establish facts concerning benefit eligibility. Id. In Heidgerd v. Olin Corp., 906 F.2d 903, 908-909 (2d Cir.1990), the Court "appear[ed] to have accepted without discussion a district court's consideration on de novo review of evidence not presented to the plan administrator." Masella, 936 F.2d at 104
 
 
 [13]
 We find completely without merit Golosky's other contention that the district court erred by questioning, and by how and when it questioned, the Administrator about Francis Luby's signatures
 
 
 [14]
 We have reviewed and find without merit Golosky's arguments that the Fund is not entitled to restitution because she materially changed her position, to her detriment, in reliance on the mistaken benefit payment
 
 
 [15]
 In Airco, 850 F.2d 1028, we did not address whether the district court correctly concluded that an employer has a federal cause of action for restitution from an ERISA plan for overpayments to it, although the district court opinion was later cited with approval in Plucinski, 875 F.2d at 1057-58, where we held specifically that such a cause of action existed
 
 
 [16]
 We also reject Golosky's contention that the district court erred by denying her Rule 41(b), Fed.R.Civ.P., motion to dismiss because Mrs. Luby presented insufficient evidence to support her claim