

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-29-2005

# Goldstein v. Gastroenterology Pgh

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2252

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Goldstein v. Gastroenterology Pgh" (2005). *2005 Decisions.* Paper 1294.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1294

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2252
_____


MORTON L. GOLDSTEIN, M.D.,

an individual

v.

ASSOCIATES IN GASTROENTEROLOGY OF PITTSBURGH AMENDED AND
RESTATED PENSION PLAN; ASSOCIATES IN GASTROENTEROLOGY OF
PITTSBURGH AMENDED AND RESTATED PROFIT SHARING PLAN;
ASSOCIATES IN GASTROENTEROLOGY OF PITTSBURGH PENSION PLAN
TRUST; ASSOCIATES IN GASTROENTEROLOGY OF PITTSBURGH PROFIT
SHARING PLAN TRUST; ASSOCIATES IN GASTROENTEROLOGY, INC.,
a corporation; GEORGE L. ARNOLD, M.D.; LEE M. WEINBERG, M.D.,
as Trustees of the Associates in Gastroenterology of
Pittsburgh Pension Plan Trust and the Associates in
Gastroenterology of Pittsburgh Profit Sharing Plan Trust,

Appellants


_____


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Dist. Court No. 02-cv-00311
District Judge:  The Honorable Terrence F. McVerry

_____


Submitted pursuant to LAR 34.1(a)
March 29, 2005

Before:  ALITO, SMITH, and ROSENN, Circuit Judges

(Filed: April 29, 2005)

_____

## OPINION OF THE COURT
_____

PER CURIAM:

Dr. Morton Goldstein ("Plaintiff"), a licensed physician and the co-founder of Associates in Gastroenterology, Inc. ("Associates"), a medical practice based in Pittsburgh, Pennsylvania, filed this action for wrongful denial of retirement benefits against Associates, two retirement plans established and administered by Associates on behalf of its employees (the "Pension Plan" and the "Profit Sharing Plan"), related entities created to invest and maintain the assets of the Plans, and two trustees of the related entities (collectively, "Defendants").

We conclude that there is no genuine issue as to any material fact and that Plaintiff was entitled to judgment as a matter of law. We therefore affirm the judgment of the District Court.

## I.

We exercise plenary review over the District Court's grant of summary judgment. Int'l Union, UMWA v. Racho Trucking Co., 897 F.2d 1248, 1252 (3d Cir. 1990). Federal Rule of Civil Procedure 56(c) states that summary judgment may be granted only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

-2-

## II.

The Supreme Court has identified the standard of review to be used in considering actions under 29 U.S.C. § 1132(a)(1)(B) for denial of ERISA benefits. Where a plan document does not give the fiduciary the specific authority to determine eligibility for benefits or to construe the terms of the plan, a court should review the denial of plan benefits de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). A court should use the more deferential "arbitrary and capricious" standard only if the plan grants the fiduciary specific authority. Id. at 115.

The language of the Plans at issue here does not grant the trustees specific authority to determine benefits or construe the Plans' terms. The trustees have broad administrative authority to "control, manage and administer" the Plans, and to "oversee and insure to the extent possible that the procedures established by the Plan[s] . . . are carried out," but this language does not amount to a specific grant of authority. See Luby v. Teamsters Health & Welfare & Pension Trust Funds, 944 F.2d 1176, 1180-81 (3d Cir. 1991) (holding that plan authorizing trustees to "consider and decide upon a program for payment of benefits from the Trust Fund" and to amend the system of trust administration nevertheless did not grant trustees the specific authority to determine benefits or construe terms). We therefore apply a de novo standard of review in considering the denial of Plaintiff's claim for benefits. See Id., 944 F.2d at 1184.

-3-

**III.**

The parties dispute the date that should be used to set the value of Plaintiff's benefit accounts. Plaintiff contends that he was entitled, not only to receive distribution of his benefits on any date after his 65th birthday, but also to choose the day by which the value of his benefits would be set. Defendants counter that the value of Plaintiff's benefits must be set by the date on which Plaintiff became entitled to benefits, and that, under the terms of the Plans, Plaintiff did not become entitled to benefits until September 20, 2001, when he returned his executed participant distribution election forms.

As the District Court noted, the pertinent provisions and language of the Plans are not ambiguous, and the issues here presented may be determined as a matter of law. Defendants' position is unreasonable. The terms of the Plans do not condition an interim valuation of assets upon the receipt of completed participant distribution election forms, and the parties did not agree to such a condition independent of the Plans.

Defendants are correct insofar as they contend that Plaintiff's "interim valuation date" is equivalent to his "benefit entitlement date." Section 5.05 provides as much:

> If, based upon facts and circumstances, there is reason to believe that there has been substantial change in the fair market value of the Plan assets from the preceding valuation date to the Participant's benefit entitlement date, then, at the request of any Participant, the assets of the Plan shall be revalued as of the Participant's benefit entitlement date. In such event, the value of the Participant's account(s) shall be determined, for purposes of distribution, as of that interim valuation date, and this Section 5.05 shall be applied, for the balance of the Plan Year, as if the interim valuation date were the preceding annual valuation date. Notwithstanding the foregoing, in no event shall more than 2 interim valuations be required in any Plan Year.

-4-

(emphasis added). However, the date on which Plaintiff submitted his distribution election form does not necessarily determine his valuation date. For although the Plans require participants to make certain distribution choices in writing on forms furnished by the Plan Administrator, the Plans never provide that these distribution election forms address or control the valuation of benefits. See Article VII §§ 7.01, 7.02, 7.03 and 7.08 (Pension Plan) and §§ 7.01 and 7.09 (Profit Sharing Plan).

Moreover, the terms of the Plans make plain that valuation may be set by a day other than the day on which distribution begins. In fact, according to the terms of Sections 5.05 and 1.21 of the Plans, even if a participant elected to receive his full retirement benefit when he turned 65 years-old and accepted the annual valuation date of March 31, the participant's benefit entitlement date would, unless he were born on March 31, fall upon a different date than his annual valuation. Thus the most straightforward participant choice possible would still create a situation in which the value of a participant's assets would be set by a different day than the day on which they were distributed. Consider, for example, a man who turns 65 on December 7, 2006. His assets would be valued according to the annual valuation date immediately preceding December 7, 2006. See § 5.05(a). The annual valuation date is the last day of each Plan Year. Id. A Plan Year is the 12 consecutive month period beginning on April 1 of each year and ending on the following March 31. See § 1.21. The annual valuation date immediately preceding December 7, 2006, would therefore be March 31, 2006. The value of the

man's assets, and those of the fund as a whole, could change a great deal in those eight months.

In addition to not being in accord with the terms of the Plans, Defendants' position is also in conflict with what the parties agreed to. On August 27, 2001, Plaintiff received a letter dated August 6, 2001, purportedly from the Plans' attorney, Kabala, but signed by the two Defendant trustees. In the August 6th letter, the Defendant trustees acknowledged Plaintiff's request for an interim valuation date of August 31, 2001, but offered that July 31, 2001 be used instead. The letter then stated that Plaintiff's funds would be distributed as soon as possible after the receipt of the distribution election forms and after completion of the interim valuation process. By letter of September 7, 2001, Plaintiff advised the Defendant trustees that he accepted their proposal: "I would like to value the assets as of that July 31, 2001 date, and make the distribution as soon as possible."

Defendants now claim that they actually accepted the alternative "true-up" valuation method proposed by Plaintiff's accountant in a letter of August 14, 2001. Under the true-up valuation method, Plaintiff's percentage of the Plans' assets would be calculated as of August 31, 2001, but the percentage would be applied to (meaning multiplied by) the assets as of September 30, 2001, and Plaintiff would receive the product of this calculation. There is no evidence to support Defendants' claim, and acceptance was not even possible given the actual terms of the proposal put forth by

-6-

Plaintiff's accountant: The offer of the true-up valuation method was only available if the standard valuation method — using the July 31, 2001, valuation date — could not be completed by the third week of September. Because the Plans' accountant completed the standard valuation on September 15, 2001 (before the third week of September), Defendants could not comply with the terms of Plaintiff's true-up valuation offer.

Accordingly, we affirm the District Court's decision that Plaintiff is entitled to distribution of the assets of his benefit accounts at the interim values as of July 31, 2001.

**IV.**

Section 502(g)(1) of ERISA provides that the court, in its discretion, may allow a reasonable attorney's fee and costs of action. 29 U.S.C. § 1132(g)(1). This Court has held that, in analyzing whether to award attorney's fees, courts should examine: "the offending party's culpability or bad faith; the ability of the offending party to satisfy the award . . .; the deterrent effect of an award; the benefit conferred on members of the pension plan as a whole; and the relative merits of the parties' position." Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983) (numbering of factors omitted). Because the District Court weighed these factors appropriately, we affirm the District Court's decision regarding attorney's fees.

**V.**

Interest on delayed ERISA benefits is an equitable remedy left to the discretion of the trial court. Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 131 (3d

Cir. 2000).  Prejudgment interest on delayed ERISA benefits is also "presumptively appropriate."  Id. (citation omitted).  It is to be awarded "when the amount of underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due."  Anthius v. Colt Indus. Operating Corp., 971 F.2d 999, 1010 (3d Cir. 1992).  The District Court was within its discretion when it concluded that Plaintiff's damage claim was liquidated and that an award of prejudgment interest was justified to compensate Plaintiff under the facts of the case.

## VI.

For the foregoing reasons, we affirm the judgment of the District Court.