**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1248
_____

ANTHONY MAZZA; MAZZA SHEET METAL CO., INC.

v.

SHEET METAL WORKERS' NATIONAL PENSION FUND,

Appellant


On Appeal from the United States District Court
for the District of New Jersey
(Civ. No. 09-281)
District Judge: Hon. Katharine S. Hayden


Submitted Under Third Circuit LAR 34.1(a)
November 17, 2010

Before: BARRY, CHAGARES, and VANASKIE, <u>Circuit Judges</u>.

(Filed  December 21, 2010 )

_____

OPINION
_____


CHAGARES, <u>Circuit</u> <u>Judge</u>.

  Plaintiffs Anthony Mazza and Mazza Sheet Metal Company, Inc. seek a refund of

contributions made to defendant Sheet Metal Workers' National Pension Fund on behalf

of Anthony Mazza, as the owner-operator of Mazza Sheet Metal. Following a bench trial on the issue, the District Court held that, as a matter of equity, the plaintiffs were entitled to restitution of the contributions. Because we find that § 403(c) of the Employee Retirement Income Security Act ("ERISA") prohibits such restitution under the circumstances, we will reverse.

I.

We write solely for the benefit of the parties and will, therefore, only briefly recite the essential facts. In 1990, Anthony Mazza, a union sheet metal worker, started Mazza Sheet Metal Company and became what is known in the industry as an "owner-operator." This meant that he could operate as an employer of other sheet metal workers, but remain a union journeyman and perform sheet metal work alongside his employees.

Mazza Sheet Metal entered into a collective bargaining agreement (the "Agreement") with Sheet Metal Workers' International Union Local 25 ("Local 25"), which required Mazza Sheet Metal to make pension contributions to the Sheet Metal Workers' National Pension Fund (the "Fund") on behalf of any union journeymen hired to work on Mazza Sheet Metal's contracts. The Agreement further required Mazza Sheet Metal to contribute to the Fund on behalf of Anthony Mazza for any hours of sheet metal work that he performed alongside his employees. If Mazza Sheet Metal's contributions to the Fund failed to account for the hours of sheet metal work performed by Anthony Mazza, it would no longer be eligible to hire union journeymen from Local 25.

Mazza Sheet Metal began contributing to the Fund for Anthony Mazza's hours, as well as for those of the union journeymen that he hired in 1991, in accordance with the

2

Agreement. In July 1996, however, the Fund sent Anthony Mazza a letter advising him that, in order to be approved as an owner-operator plan participant and receive pension credits for the contributions made on his behalf, he had to file an owner-operator registration statement, which would have obligated him to contribute for at least 1,680 hours of his own work per year, regardless of the hours that he actually worked. The Fund enclosed in this letter a refund form that Anthony Mazza could submit for return of his personal contributions if he chose not to register as an owner-operator.

Because Anthony Mazza performed far fewer than 1,680 hours of sheet metal work in a year, he did not file the registration statement. But, because he also did not want to forfeit his ability to hire union journeymen, he continued to contribute to the Fund for the hours that he actually worked, as required by the Agreement, without responding to the Fund's communication. The Fund sent Anthony Mazza a "FINAL NOTICE" in November 1996, informing him that all of his personal contributions would be stricken within 30 days unless he filed the owner-operator registration statement. Still, he decided not to respond to the Fund's communication because he needed to remain eligible to hire union journeymen in order to complete his contracts and maintain his company's economic viability.

Effective January 1, 2002, the Fund changed its contribution requirements, such that owner-operators could participate in the Fund without filing the owner-operator registration statement that required them to contribute for 1,680 hours per year. Anthony Mazza received a notice alerting him to this change. The notice also made clear, however, that owner-operators still needed to file the registration statement in order to

3

receive pension credits for hours worked before the change took effect. As such, the Fund enclosed a retroactive registration statement, which had to be returned within sixty days to prevent removal of pension credits for all hours worked prior to January 1, 2002. Though Anthony Mazza received and understood this communication, he continued to make contributions, without filing the retroactive registration statement or otherwise responding to the Fund. Having received no response, the Fund sent a second copy of both the policy change notice and the retroactive registration statement on December 16, 2002. Again, Anthony Mazza did not respond.

The Fund sent Anthony Mazza a final letter on April 24, 2003, stating that, because it had received no response from Mazza Sheet Metal, the Fund's Trustees had determined that the contributions made on behalf of Anthony Mazza, prior to January 1, 2002, were remitted in error. The letter informed Mazza Sheet Metal that it had six months to either request a refund of the mistaken contributions or file an executed retroactive registration statement, if the contributions were not in fact mistaken. The letter further made clear that a refund was not automatic and that a refund would no longer be available after the six-month period lapsed. Though he acknowledges that he received and understood this letter, Anthony Mazza still did not respond to the Fund.

In 2008, two years after retiring, Anthony Mazza applied for a pension based on the contributions Mazza Sheet Metal made on his behalf between 1991 and 2001, but the Fund denied his application on the basis that he had never been a participant in the Fund during that period. Anthony Mazza then filed this action seeking a refund of his contributions. He alleged that it was inequitable for the Fund to retain his contributions

4

without providing him a pension in return.  The District Court, rejecting the Fund's arguments that § 403(c) of ERISA prohibited it from refunding the contributions under the circumstances, found that the Fund had been unjustly enriched by the contributions and ordered restitution.

## II.

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

"We exercise plenary review of the district court's legal conclusion[] that restitution was an appropriate remedy.  If the district court did not err in its legal conclusions, our review of the district court's assessment of the equities is for abuse of discretion."  Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176, 1185-86 (3d Cir. 1991).

## III.

Section 403(c)(1) of ERISA establishes that the assets of a multiemployer fund shall never inure to the benefit of an employer; rather, the fund's assets must be held for the exclusive benefit of plan participants and their beneficiaries (the "anti-inurement and exclusive benefit rule").  29 U.S.C. § 1103(c)(1).  As a general matter, therefore, it is a violation of § 403(c)(1) to pay out to an employer, whether by way of refund or otherwise, contributions made to a multiemployer fund.  But § 403(c)(2)(A)(ii) carves out a narrow exception:  it does not violate the anti-inurement and exclusive benefit rule to refund a contribution made mistakenly by an employer, if such refund is made within six

5

months after the plan administrator determines that the employer made the contribution in error.  See 29 U.S.C. § 1103(c)(2)(A)(ii).

While "[s]ection 403(c)(2)(A)(ii) makes it possible for the trustees of a fund to refund mistaken contributions without facing a suit from beneficiaries for violating the non-inurement provision of section 403(c)(1)[,]" it "neither requires such refunds to be made, nor provides employers a right of action against the fund if such refunds are not made." Plucinski v. I.A.M. Nat'l Pension Fund, 875 F.2d 1052, 1055 (3d Cir. 1989).  In the context of ERISA, however, Congress has authorized the federal courts to create common law, where it is "'necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.'" Id. at 1056 (quoting Van Orman v. Am. Ins. Co., 680 F.2d 301, 312 (3d Cir. 1982)).  In accordance with that authority, this Court has held that, as a matter of federal common law, there exists "an equitable cause of action by employers for the recovery of contributions erroneously paid to pension funds due to a mistake of fact or law." Id. at 1057.  This cause of action is necessary to fill in the interstices of § 403(c), which provides a framework for the return of mistaken contributions to employers, but does not provide employers with a mechanism for enforcing the right to a refund conferred on them by this framework. See id.  "Of course, general equitable principles govern" and the court should, in its sound discretion, award restitution only when the equities favor such an order. Id. at 1057-58.

Regardless of the equities at stake, however, "resort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA. . . ." Singer v. Black & Decker Corp., 964 F.2d 1449, 1452 (4th

6

Cir. 1992). "If federal common-law restitution would contravene a [statutory or contractual] term of an ERISA plan, it will be permitted only if there is a 'particularly strong affirmative indication that such a right would effectuate a statutory policy.'" Luby, 944 F.2d at 1186 (quoting Van Orman, 680 F.2d at 312-13). It is for this reason that we emphasized in Plucinski that the equitable cause of action we recognized merely fills in the interstices of the statutory scheme enacted by Congress in § 403(c) of ERISA. 875 F.2d at 1058. Accordingly, this equitable remedy is inherently moored in and bounded by the narrow exception to the anti-inurement and exclusive benefit rule set forth in § 403(c)(2): no restitution may be made unless the employer establishes a right to a refund of the amount mistakenly contributed by filing a claim within six months of the plan administrator's determination that the contribution was made in error. See also 26 C.F.R. § 1.401(a)(2)-1(b) (explaining, with reference to the parallel provision of the Internal Revenue Code, that a refund is deemed timely only if the employer files "a claim with the plan administrator within six months after the date on which the plan administrator determines that a mistake did occur.").

## IV.

In our analysis of this case, "[w]e begin with a fundamental premise: every claim for relief involving an ERISA plan must be analyzed within the framework of ERISA." Hooven v. Exxon Mobil Corp., 465 F.3d 566, 573 (3d Cir. 2006). Notwithstanding this dictate, the District Court held that the constraints set forth in § 403(c) of ERISA did not govern the refund request at issue here because the applicable remedy — that created by Plucinski — was a creature of federal common law, not a creature of statute. See 875

7

F.2d at 1057. Applying only general common law principles of equity, the District Court found that the Fund had been unjustly enriched when it accepted and retained employer contributions on behalf of Anthony Mazza with the knowledge that he would not receive pension credits in exchange. Because the District Court did not view the April 24, 2003, letter against the backdrop of § 403(c) of ERISA, it found the six-month time limit placed on any refund request to be arbitrary, especially in light of the fact that the lengthy delay in the plaintiffs' refund claim had caused no demonstrable prejudice to the Fund. Accordingly, the District Court concluded that the equities weighed in favor of the plaintiffs and that restitution of the employer contributions was, therefore, an appropriate equitable remedy.

While we agree that the remedy recognized in Plucinski is a matter of federal common law, it is not a free-standing common law cause of action. Rather, as discussed above, the equitable cause of action for recovery by an employer of erroneously paid pension fund contributions exists only in the interstices of § 403(c) of ERISA. Indeed, this Court invoked general equitable principles expressly for the purpose of "effectuat[ing] the statutory pattern enacted in the large by Congress." Plucinski, 875 F.3d at 1056. Notably, Anthony Mazza does not dispute that, as owner of Mazza Sheet Metal, he qualified as an "employer" for purposes of § 403(c) of ERISA. And neither is there any dispute that the Fund is a multiemployer ERISA plan. Thus, we must conclude that the District Court erred in deciding this case without regard to the limits of § 403(c). With that in mind, we turn to the application of the equitable remedy recognized in Plucinski to the facts of this case.

8

Even assuming that the equities presented by this case indeed favor the plaintiffs, as the District Court found,[1] a court should not easily fashion an equitable remedy, under the guise of federal common law, that contravenes ERISA's carefully crafted statutory scheme. Luby, 944 F.2d at 1186 (quoting Van Orman, 680 F.2d at 312-13); see also Ryan ex rel. Capria-Ryan, 78 F.3d 123, 126 (3d Cir. 1996) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 258-60 (1993) ("As the Supreme Court has explained, '[t]he authority of courts to develop a 'federal common law' under ERISA ... is not the authority to revise the text of the statute.'")). The plaintiffs admit that they did not make the contributions at issue here in error. Instead, they very deliberately made the contributions so as to comply with the Local 25 collective bargaining agreement. Under such circumstances, providing the plaintiffs with a refund of the contributions runs afoul of §403(c) of ERISA, which excuses from the requirements of the anti-inurement and exclusive benefit rule only a refund of those employer contributions that were made on the basis of a mistake of fact or law.

---

[1] Because we conclude below that the District Court erred in its legal conclusion that restitution was an appropriate remedy, we find it unnecessary to review the District Court's assessment of the equities for an abuse of discretion. Nonetheless, we note that it is not entirely clear that the equities involved in fact favor the plaintiffs. After all, the plaintiffs did receive a benefit from the contributions. By making the contributions on behalf of Anthony Mazza, Mazza Sheet Metal was able to hire the union workers that it needed to complete its contracts and remain in business, which inured to the benefit of its owner, Anthony Mazza. And courts generally recognize that restitution is inequitable where the payor seeks to recoup a payment, though he has obtained a benefit from that payment which he intends to retain. See Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr., 258 F.3d 645, 651 (7th Cir. 2001).

Moreover, even if the contributions can indeed be deemed mistaken, restitution on the facts of this case still falls outside the scope of § 403(c)(2)'s narrow exception to the anti-inurement and exclusive benefit rule because Mazza Sheet Metal failed to file a refund claim within six months of the plan administrator's determination that the contributions were made in error. Anthony Mazza admits that he received a letter from the Fund, dated April 24, 2003, which stated that the Fund's Trustees had determined the contributions made on his behalf to have been erroneous. This letter also provided a remedy for such error that comported precisely with the requirements of ERISA, as informed by the regulations associated with the parallel provision of the Internal Revenue Code: it granted Mazza Sheet Metal six months from the date of the notice to file a claim for a refund. But Anthony Mazza chose not to take advantage of this remedy because he wanted to continue to hire union workers to fulfill Mazza Sheet Metal's contracts and, in order to remain eligible to do so, his company had to make contributions to the Fund for the hours of sheet metal work that he performed. The plaintiffs waited five more years to seek a refund of the contributions made on Anthony Mazza's behalf by filing this action. Yet, by that time, it was far too late for the Fund to refund the contributions — to have done so would have been a violation of § 403(c)(1)'s anti-inurement and exclusive benefit rule.

In short, it appears that by ordering restitution of employer contributions that were not remitted in error, and for which no timely refund request was made, the District Court ordered the Fund to do something, in the name of federal common law, that contravenes § 403(c) of ERISA. ERISA only leaves room for such a course of action when there

10

exists a "particularly strong affirmative indication" that the equitable remedy ordered "would effectuate a statutory policy." Luby, 944 F.2d at 1186 (quotation omitted). Section 403(c) places strict limits on the circumstances under which a multiemployer fund may refund employer contributions in order to further ERISA's primary purpose of protecting and stabilizing the assets of employee pension plans, thereby safeguarding the interests of plan participants and their beneficiaries. See State St. Bank & Trust Co. v. Denman Tire Corp., 240 F.3d 83, 89 (1st Cir. 2001) (citing 29 U.S.C. § 1104(a)(A)(i)-(ii)). Viewed in this light, we can discern no "particularly strong affirmative indication" that the purposes of ERISA would be served by restitution of employer contributions under the circumstances presented here.[2]

## IV.

For these reasons, we will reverse the judgment of the District Court.

---

[2] The District Court seems to have been persuaded that, because Anthony Mazza, as an owner-operator, was both an employer and a plan participant, restitution of the contributions made on his behalf would not undermine ERISA's primary purpose of protecting plan beneficiaries. But, though Anthony Mazza performed sheet metal work alongside his employees, he was only an employer in relation to the Fund. Indeed, he admits that he understood that he did not qualify as a plan participant, but that Mazza Sheet Metal continued to contribute to the Fund on his behalf because he wanted to remain eligible to hire union workers.